# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIE R. GOMAR, | ) 1:08cv00675 GSA |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **BACKGROUND**

Plaintiff Marcie R. Gomar ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge. [1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On August 5, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

**FACTS AND PRIOR PROCEEDINGS**[2]

On February 22, 2006, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability since February 18, 2005, due to arthritis, nerve damage, sciatica, pain in shoulders, and back and leg problems. AR 51, 58. The applications were denied initially and upon reconsideration. AR 9. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 9. ALJ David E. Flierl held a hearing on November 6, 2007, and issued an order denying benefits on January 22, 2008. AR 6, 9-14. On March 14, 2008, the Appeals Council denied review. AR 1-3.

Hearing Testimony

ALJ Flierl held a hearing on November 6, 2007, in Fresno, California. Plaintiff appeared and testified. She was represented by Robert A. Ishikawa. AR 17. Vocational Expert ("VE") Jose Chaparro also testified. AR 21, 35-36.

Plaintiff testified that she was thirty-six years old at the time of the hearing. She held a valid California driver's license, and her source of income at that time was child support. AR 18.

Plaintiff completed high school, had no problems reading or writing, and had worked as a phlebotomist and a transcriber at a hospital within the last fifteen years. AR 19-20. As a phlebotomist, Plaintiff was sometimes required to lift biohazard containers weighing twenty pounds or more. AR 19. She would do so every evening, at the end of her shift. AR 19. When her license expired, Plaintiff transferred from a laboratory assistant to a ward clerk transcriber. AR 19-20.

Plaintiff testified that she had last worked on February 18, 2005. When asked why, she said that she had sustained an injury to her back while helping her husband tile their house. Shortly thereafter, Plaintiff could no longer bend, or move. AR 22.

Although Kaiser had asked her to return to work, they could not extend Plaintiff's doctor's note past fourteen months, because they had to fill her position. AR 22. At the time,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff was experiencing severe pain. She could not stand for prolonged periods of time, and therefore had to give up her position at Kaiser. AR 22.

Plaintiff testified that she was still experiencing severe pain from the waist down. The pain extended from the right knee, up to her waist and lower back. AR 23. Plaintiff described a sporadic tingling, numbness, and fiery sensation in her right leg, and testified that her knee had often gone out from under her, causing her to collapse. AR 23. On her left side, the pain extended from her buttocks to the heel of her left foot. Plaintiff testified that the pain was constant on the left side, and rarely subsided. AR 23. In addition, the pain in the left leg was often exacerbated by sciatica. AR 23.

When asked how the pain had affected her, Plaintiff testified that the pain was severely debilitating. She stated that she could not stand for long periods of time, and that the numbness in her leg was especially terrifying since she had fallen over on several occasions. AR 24. She also testified that the pain had affected her household, since she was precluded from performing many of her previous chores. AR 24. Plaintiff stated that the financial impact was also significant, since receipt of child support had made her ineligible for any other benefits, and she no longer had a steady stream of income. AR 25.

Plaintiff indicated she could not stand for more than fifteen minutes at a time. Cumulatively, she could not stand longer than an hour in an eight-hour day. AR 25. Plaintiff testified that she could sit for thirty to forty minutes at a stretch, but could not sit for more than two hours in an eight-hour day. AR 25. When asked what might happen if she exceeded the two hours, Plaintiff said that she would grow restless trying to find a comfortable position. AR 25.

Plaintiff habitually lays down for fifteen to twenty minutes each day and testified that she had trouble sleeping because the lingering pain would keep her awake. As a result, she would try to nap whenever the pain was tolerable. AR 26.

Plaintiff testified that she could lift up to fifteen pounds, but generally refrained from doing so. She only carried a few light bags of groceries, leaving the rest to her children. AR 27. She also testified that the pain affected her concentration, which in turn affected her ability to read or watch television. AR 27.

Plaintiff claimed that she had been prescribed Extra Strength Vicodin, and when not on Vicodin, she relied on Darvocet. She had also been prescribed Motrin 800 for the recent pain in her shoulders and arms. AR 28. Plaintiff claimed that the Vicodin would tend to keep her up at night, and that although it would ameliorate the pain, it would not eliminate it. Plaintiff also testified that the Vicodin was often alternated with Toradol. AR 28.

According to Plaintiff, she lived in a house with her three teenage children, aged sixteen, fifteen and fourteen respectively. Due to her inability to do household work, Plaintiff had a sister from church come in once a week. In the interim, Plaintiff's children did most of the house work. AR 30. Plaintiff was barely able to cook, and relied heavily on her rice cooker and crock pot. AR 30. She did her own laundry two times a week, while the children did their own laundry. AR 30.

Plaintiff testified that she attended church Tuesday and Wednesday nights, and also attended church twice on Sundays. AR 31. She went out for groceries once a week, and visited her doctor occasionally. AR 31. Plaintiff visited Dr. Nguyen at the Hillman Clinic every few months after her insurance had terminated. AR 31,

Plaintiff testified that she avoided bending, or stooping at all costs. AR 32. She had received four cortisol injections in her spine. AR 33. Although Plaintiff had been sent for an MRI, two different places were unable to conduct the procedure because Plaintiff would not fit in their machine. AR 22. Plaintiff claimed that her previous doctor, a specialist at Bellflower, had told her that she was not a spinal surgery candidate. AR 22-23.

Plaintiff also testified that her previous doctor had recommended acupuncture, but she no longer had her insurance with Kaiser and could not afford it otherwise. AR 34. She claimed to have undergone physical therapy in regard to a past incident in which she had fallen in her tub, and also attended three to four sessions with a chiropractor. AR 34.

Finally, when asked whether Plaintiff knew that many of her problems were the result of her excessive weight, Plaintiff stated that Dr. Nguyen had, on occasion, advised that she lose some weight and she added that she would willingly undergo gastric bypass if only her insurance would cover it. AR 35.

During the hearing, VE Chaparro also testified. When asked to classify Plaintiff's past work as to skill and exertion level, the VE indicated that her work as a phlebotomist is classified as light semi-skilled, and her work as a ward clerk transcriber is classified as light semi-skilled as well. AR 21. For the first hypothetical, the VE was asked to consider a person, thirty-three years of age at the alleged onset date, education and past relevant work as discussed earlier. He was asked to assume that such a person was limited to light level of exertion, was occasionally limited regarding balancing, stooping, kneeling, crouching and crawling, and was similarly limited with regard to ramps, stairs and climbing. The VE was asked whether a person with the above limitations could perform any of his or her past relevant work. AR 35. According to the VE, such a person would be able to perform Plaintiff's past relevant work. AR 35.

The VE was then asked to consider, in addition to the above hypothetical, a person who would be unable to maintain attention and concentration for one hour increments because of severe pain syndrome. When asked whether this would affect the occupational base, the VE replied that this would in effect eliminate all jobs, including the past relevant work. AR 35-36.

The VE was finally asked to consider Plaintiff's testimony as to sitting, standing and walking, and whether those restrictions would preclude a work activity. AR 36. Therefore, the VE had to consider a person, thirty-three years of age at the alleged onset date, with Plaintiff's past education and past relevant work, who could stand no more than fifteen minutes at a time and cumulatively, no more than an hour in an eight-hour day; and who could sit no more than thirty to forty minutes at a time, and cumulatively, no more than two hours in an eight hour day. The VE testified that such restrictions, if taken to be true, would preclude a work activity. AR 36.

   Medical Record

The record is summarized here with particular regard to the reports of Chi Nguyen, M.D., and Paul Hwang, M.D. Nonetheless, the record as a whole was reviewed and will be specifically referenced where appropriate.

Initial Diagnostic reports dated March 1, 2005, indicated the presence of diffuse degenerative changes in Plaintiff's lower thoracic region, but showed no significant lumbar spine

abnormality. Plaintiff stated that her pain, at the time, was equivalent to an eight on a scale of one to ten. AR 145-146. On March 8, 2005, Plaintiff informed a low back pain consultant of a fall in her bath tub years ago. Plaintiff was diagnosed with lower back pain and was advised to undergo physical therapy. AR 140.

Dr. Golden's notes dated March 14, 2005, indicated that Plaintiff had been given cortisol injections recently, but that they had done little to alleviate her pain. The diagnostic impression was low back pain, and the physician prescribed Toradol in addition to the preexisting medication. AR 139. A notation that Plaintiff could return to work on March 21, 2005, was also included in the treatment plan. AR 139. Plaintiff was unable to return to work on the date specified above, and on April 4, 2005, Progress Notes indicated that the Plaintiff still experienced lower back pain, and that her current medications consisted of Flexaril, Motrin and Vicodin. AR 136. She was diagnosed with lumbar strain and was estimated to return to work on April 18, 2005. AR 136.

On April 28, 2005, a physical medicine consultation with Paul Hwang, M.D., revealed that Plaintiff still suffered from lower back pain, resulting in the prescription of more pain medication consisting of Sulindac, Flexeril and Vicodin. AR 134. On that occasion, Plaintiff also disclosed that she had fallen in her bath tub two years ago. AR 134.

A CT scan dated June 15, 2005, revealed a small disc protrusion most likely present posteriorly to the right of midline at L5-S1. AR 176. The physician indicated that this most likely minimally indented the right S1 traversing nerve root. No other disc protrusion or extrusion was noted. AR 176.

On February 13, 2006, Plaintiff consulted Dr. Hwang, once again prompted by her lower back pain which she characterized as an eight or nine out of ten. AR 130. Dr. Hwang's findings indicated tenderness on palpation at L3 and L5 spinous processes and bilateral paraspinal muscles. He found reduced range of motion in the lumbar spine, with flexion and extension, and lateral rotation. AR 131. He also reported a finding of negative straight leg raising bilaterally. AR 131. According to Dr. Hwang's assessment, Plaintiff suffered from low back degenerative disc disease and lumbar radiculopathy. AR 131. The recommendations were that Plaintiff return

to work on February 21, 2006, per Plaintiff's request, that she undergo acupuncture in order to alleviate the pain, and that she continue with her weight loss and diet. AR 131. Dr. Hwang also recommended that Plaintiff continue activity modification and that she try to get as much exercise as possible. He also advised that she do some home range of motion and stretching exercises. AR 132.

In a case analysis conducted by W. G. Jackson, M.D., dated September 22, 2006, the physician documented that Plaintiff was not dependent on any assistive devices for ambulation, was occasionally able to lift light items, was on a conservative pain medication regimen, and that the severity of her pain was unsupported by the findings. AR 157. He also reported that Plaintiff had normal gait, that the evidence did not support an allegation of arthritis, and that the Plaintiff only used "mild medications for the pain," and that there was "no evidence of more aggressive pain control measures or frequent visits for the management of pain." AR 157. The physician agreed with the recommendation that Plaintiff could engage in work that was light with postural limitations. AR 157.

On October 13, 2006, Plaintiff visited Chi Nguyen, M.D., at the Hillman Health Center for a refill of her Vicodin. AR 163. His assessment was obesity and chronic lower back pain and he noted tenderness on the lumbar spine. AR 163. On November 21, 2006, Plaintiff consulted Dr. Nguyen for a follow up of lab results. She informed him that she did not fit in the MRI machines because of her weight, and that she had been told by another specialist that she was not a suitable candidate for spinal surgery. AR 160. Plaintiff complained that the medication she was on did little to alleviate her pain; as a result, Dr. Nguyen prescribed a higher dosage of Vicodin. AR 160.

At a consultation with Plaintiff on January 22, 2007, Dr. Nguyen noted that Plaintiff had requested different pain medication since the Extra Strength Vicodin was not helping. AR 170. His assessment indicated obesity and chronic low back pain due to a small herniated disc at L5, S1. AR 170. Dr. Nguyen recommended that Plaintiff discontinue the Extra Strength Vicodin, and started her on a course of Darvocet –100. AR 170.

A Case Analysis performed by Sadda V. Reddy, M.D., dated February 23, 2007, noted that although Plaintiff had lower back pain, there were no significant findings on x-rays, and that there had been no ongoing significant pain management. AR 164. Except for tenderness of the lumbar spine, Dr. Reddy found no other significant findings and affirmed the prior residual functional capacity (RFC) determination of light with postural limitations, dated September 22, 2006. AR 164. Also, on February 22, 2007, Plaintiff visited Dr. Nguyen for a refill of her Darvocet. His assessment on that date was morbid obesity, chronic lower back pain and health care maintenance. AR 169.

On May 24, 2007, Plaintiff attended a followup consultation with Dr. Nguyen on account of the pain in her legs. AR 168. Dr. Nguyen made a notation that all of her medical problems were related to her obesity, and he assessed Plaintiff with lower back pain and arthritis. AR 168.

During August and September, 2007, Plaintiff underwent chiropractic treatment at the Mendonca Chiropractic Group. AR 171.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 18, 2005, the alleged onset date; and that Plaintiff had the following severe impairments: obesity and degenerative disc disease. AR 11.

Based on a careful consideration of the entire record, the ALJ determined that Plaintiff retained the RFC to lift and carry twenty pounds occasionally and ten pounds frequently. That Plaintiff could frequently sit, stand, and walk for six hours in an eight-hour day, and could occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 12.

The ALJ noted that although Plaintiff's medical impairments could reasonably be expected to produce the symptoms she alleged, the Plaintiff's statements as to the severity and limiting nature of the impairments were not entirely credible. AR 13. The ALJ also noted that Plaintiff's frequent visits to physicians constituted attempts to generate evidence for her application and appeal, rather than to allay her pain. The ALJ also documented conflicting accounts of the origin of Plaintiff's pain. AR 13. One incident involved a slip in the tub in 2003, and another involved a back injury attributable to carrying excess weight while tiling her home

in 2005. AR 13. The ALJ also made note of the fact that there were no significant findings on x-rays, there were no referrals for surgery or physical therapy, and that Plaintiff had been told that she was not a candidate for spinal surgery. AR 13. Despite her allegations of disabling pain, the ALJ noted a glaring absence of any restrictions placed on Plaintiff by her treating physician. On the contrary, she was on occasion, encouraged to return to work and to continue with her diet and light exercise. AR 14.

Based on the above review, the ALJ determined that the Plaintiff was capable of performing past relevant work as a phlebotomist and unit clerk. AR 14.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42

9

U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform her past relevant work as a phlebotomist and unit clerk and (5) retained the RFC to perform light work with postural limitations. AR 11-14.

Here, Plaintiff argues that the ALJ erred in failing to attach due weight to her excess pain testimony in evaluating her credibility. She contends that this Court should reverse and order the immediate payment of benefits.

## DISCUSSION

A.   <u>Excess Pain And Credibility Analysis</u>

Plaintiff contends that the ALJ erred in failing to properly evaluate her excess pain testimony. She also contends that the ALJ improperly evaluated her credibility by failing to consider her persistent efforts to obtain relief from her symptoms of lower back pain.

The ALJ is required to make specific findings assessing the credibility of a plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735, 738 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th

1  Cir. 1996), quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th
2  Cir. 1988). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the
3  severity of her pain and impairments is unreliable, the ALJ must make a credibility determination
4  with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
5  discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

6        "Despite the inability to measure and describe it, pain can have real and severe
7  debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from
8  working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). It is possible to suffer disabling pain
9  even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to
10 disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision."
11 *Id*., citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  The findings must
12 convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602.
13 However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds
14 true even where the claimant introduces medical evidence showing that he has an ailment
15 reasonably expected to produce some pain." *Id*. at 603.

16       Once a claimant produces medical evidence of an underlying impairment likely to cause
17 the alleged pain, the ALJ may not discredit the allegations of the severity of the pain solely
18 because the evidence does not support plaintiff's statements. *Lester*, 81 F.3d at 834, citing
19 *Bunnel v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). "The ALJ may consider at least
20 the following factors when weighing the claimant's credibility: [claimant's] reputation for
21 truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her]
22 conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third
23 parties concerning the nature, severity, and effect of the symptoms of which [claimant]
24 complains." *Id*. (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's
25 credibility finding is supported by substantial evidence in the record, we may not engage in
26 second guessing." *Id*.

27       Here, ALJ Flierl made specific findings regarding Plaintiff's credibility. AR 11-14. He
28 identified with specificity the evidence he relied upon in concluding that the objective evidence

did not support Plaintiff's disabling limitations to the extent alleged. The ALJ especially noted that the "scant medical evidence established that the claimant had been conservatively treated for complaints of low back pain and obesity." AR 11.  He also noticed that despite Plaintiff's allegedly debilitating back pain, she had a normal gait and at no point was she dependent on assistive devices for ambulation.  AR 11. The ALJ referenced diagnostic reports dated March 1, 2005, that, although corroborated the presence of diffuse degenerative changes in Plaintiff's lower thoracic region, showed no significant lumber spine abnormality. AR 145-146. The ALJ also observed that on three different occasions, following her back injury, Plaintiff's physicians authorized her to return to work. AR 131, 136, 139.  The ALJ also noted that Dr. Hwang also recommended that Plaintiff continue activity modification and try to get as much exercise and perform as much home range of motion and stretching exercises as possible. AR 132. The ALJ also attached significant weight to Dr. Jackson's assessment which noted that Plaintiff was on a conservative pain medication regimen, used only "mild medications for the pain," that there was "no evidence of more aggressive pain control measures or frequent visits for the management of pain," and that the severity of her pain was unsupported by the findings. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative treatment" such as a claimant's use of only over the counter medication is sufficient to discount a claimant's testimony regarding severity of impairment).

A case analysis performed by Dr. Reddy on February 23, 2007, further affirmed Dr. Jackson's assertions. Except for tenderness of the lumbar spine, Dr. Reddy found no other significant findings and affirmed the prior RFC determination.  AR 164. The ALJ also cited Exhibit 7F which indicated Dr. Nguyen's view that all of Plaintiff's medical problems were related to her obesity. AR 12, 168. The ALJ noted that Plaintiff was able to watch television, cook, do her own laundry twice a week, go to church three times a week, grocery shop once a week and drive to and from her doctor's visits, a considerable distance away. AR 13.

The ALJ noted conflicting versions of when Plaintiff's injury occurred. Whether the injury was attributable to a slip and fall in her bath tub in 2003, or whether she injured her back while tiling her home in 2005, was in dispute. AR 130, 140. Based on the routine and

conservative nature of the treatment plan, the ALJ surmised that Plaintiff's frequent visits to her physicians were primarily an attempt to accumulate evidence for the application and appeal, rather than to alleviate her pain symptoms. AR 13. Plaintiff takes issue with the above accusation and appears to claim bias on the part of the ALJ. "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased." *Rollins v. Massanari,* 261 F.3d 853, 857-858 (9th Cir. 2001) (quoting *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999)). "This presumption can be rebutted by a showing of conflict of interest or some other specific reasons for disqualification." *Id*. Rather, the claimant is required to show that "the ALJ's behavior in the context of the whole case was so extreme as to display clear inability to render fair judgment." *Id*. Because Plaintiff has failed to present any evidence that the ALJ was biased, she has obviously failed to meet this burden.

The ALJ also noted the absence of any significant findings on x-rays, that there had been no referrals for surgery or physical therapy with regard to the latter injury, and that treating notes from Dr. Nguyen in October and November 2006, indicated no other significant findings except for tenderness of the lumbar spine. AR 13.

In evaluating the credibility of the symptom testimony, it appears that the ALJ did consider all of the factors set out in SSR 96-7p and 20 C.F.R. §§ 404,1529c(4)(i)(vii), 416.929(c)(4)(i)(vii). See *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), and *Bunnel*, 947 F.2d at 346. The SSR directs the ALJ to consider the following factors in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

    1. The claimant's daily activities;

    2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, the claimant receives or has received for pain relief or other symptoms;

1      6. Any measures other than treatment the claimant uses or has used to relieve pain or

2          other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every

3          hour, or sleeping on a board) ; and

4      7. Any other factors concerning the claimant's functional limitations and restrictions due

5          to pain or other symptoms.

        The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Additionally, the ALJ may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *see Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (ALJ's observations during the hearing, along with other evidence, constitutes substantial evidence); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility).

        If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d at 600. The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

        Here, ALJ Flierl made a specific finding that Plaintiff was able to spend a substantial part of her day engaged in pursuits that are transferable to the work setting. Plaintiff stated that she could lift fifteen pounds, and was able to watch television, cook, do her own laundry twice a week, go to church three times a week, grocery shop once a week and drive in order to visit her physicians a considerable distance away. AR 13. Based in part on the opinion evidence of the State Agency Physician and that of the VE, the ALJ concluded that Plaintiff could engage in light work which would include her past work as a phlebotomist and unit clerk. AR 14. Comparing Plaintiff's RFC with the physical and mental demands of her past relevant work, the ALJ concluded that Plaintiff would be able to perform such work satisfactorily. AR 14.

1  Finally, the ALJ observed a remarkable lack of any treatment records evidencing
2 restrictions placed on the claimant by her treating physicians. AR 13. Given the Plaintiff's
3 allegations of totally debilitating symptoms, the ALJ noted that one would expect to see such
4 restrictions in the treatment records. AR 13. To the contrary, on three separate occasions,
5 Plaintiff's physicians authorized her to return to work and she was even advised to continue with
6 her light exercise. AR 131, 132, 136, 139.

7  In sum, the ALJ is entitled to resolve questions of credibility and conflicts in the
8 testimony. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Here, the ALJ's credibility
9 determination was supported by substantial evidence, and was sufficiently specific to permit the
10 Court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v.*
11 *Barnhart*, 278 F.3d at 958.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Marcie R. Gomar.

IT IS SO ORDERED.

**Dated:   September 11, 2009**          **/s/ Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE